IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 2:21-CV-00435-JRG |
| AMAZON.COM, INC., AMAZON.COM SERVICES, INC., | § § § § § | |
| *Defendants*. | § | |

**ORDER**

Before the Court is the Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (the "Motion") filed by Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, "Amazon"). (Dkt. No. 25.) In the Motion, Amazon requests that the Court transfer the above-captioned case from this District ("EDTX") to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). The Court held a hearing on the Motion on July 19, 2022. (Dkt. Nos. 53, 56.) Having considered the Motion, the relevant briefing, the applicable law, and the arguments presented at the July 19, 2022 hearing, the Court finds that the Motion should be **GRANTED**.

I.   **BACKGROUND**

On February 28, 2022, Jawbone Innovations, LLC ("Jawbone") filed its Amended Complaint asserting infringement of nine patents directed generally to acoustic noise suppression and arrangements of microphones directed to the same. (Dkt. No. 24, ¶¶ 17–26 ("Amended Complaint").) The asserted patents were developed by a company called AliphCom, Inc.

("AliphCom") (later Jawbone, Inc.)[1], which was headquartered in San Francisco from 1998 until its bankruptcy in 2017. (Dkt. No. 25 at 1, 3; *see also* Dkt. No. 24, ¶¶ 27–29.) The asserted patents are being concurrently asserted against parties in this District and in the Western District of Texas. (Dkt. No. 25 at 5.) Jawbone accuses of infringement various Amazon products, including Echo smart speakers, Echo Show smart displays, Fire TV Cube, and Echo buds (collectively, the "Accused Products"). (*Id.* at 2; Dkt. No. 24, ¶ 83.)

    a.  **Amazon**

The Accused Products were developed by Lab126 in Sunnyvale, California, which is "part of an Amazon subsidiary." (Dkt. No. 25 at 2.) Lab126 employs a team of approximately 115 people who "design and develop" the Accused Products. (Dkt. No. 56 at 8:10–19.) Amazon therefore contends that Lab126 is the site of "[e]xtensive evidence relating to the design, development, and functionality" of the Accused Products. (Dkt. No. 25 at 2.) Amazon also identifies fourteen current and former employees of Lab126—both by name and by job description—that "worked on the audio signal processing" for the Accused Products. (*Id.*) Amazon represents that the four "former employees" remain in the San Francisco Bay Area in the NDCA. (*Id.* at 3.) Amazon concedes that two employees with knowledge of the financial and marketing aspects of the Accused Products work in Seattle, Washington, but emphasizes that "[n]o relevant Amazon employee works in this District, nor are any Amazon documents related to the [Accused Products] maintained by Amazon in this District." (*Id.*) Jawbone contends that venue is proper in this District as to Amazon due to the presence of a Fulfillment Center and "Amazon lockers" in this District. (Dkt. No. 24, ¶¶ 7–16.) Jawbone argues that Amazon also has a "data center" in Carollton, Texas which "likely" stores computer servers that provide access to Amazon's documents. (Dkt. No. 39 at 4.)

---

[1] The Court notes that this is a different Jawbone than the Plaintiff, Jawbone Innovations. (*See, e.g.*, Dkt. No. 56 at 4:19–5:13.)

2

### b. Jawbone

Jawbone is incorporated in Texas and has its place of business at 104 East Houston Street, Suite 165, in Marshall, Texas. (Dkt. No. 24, ¶ 1; Dkt. No. 25 at 5.) Jawbone was formed on February 1, 2021 and its managers are located in Maryland and New Jersey. (Dkt. No. 25 at 5; Dkt. No. 39 at 2.) Jawbone argues that these managers, as well as other executives that live in New York and New Jersey, are "located much close to this District than to the Northern District of California." (Dkt. No. 39 at 2–3.) Jawbone acquired the asserted patents in May of 2021. (Dkt. No. 56 at 5:11–16.) Jawbone contends that it "receives audio products" at its offices in Marshall and Waco and "distributes those products to customers in the United States." (Dkt. No. 39 at 1.) Jawbone states that, in its Marshall office, it stores documents related to the asserted patents, marketing, contracts, distribution, sales activities, and "inventory of Jawbone's products." (*Id*.)

### c. AliphCom

AliphCom was originally founded in 1998 and "set out to develop a noise reducing headset that would allow soldiers to communicate better in combat conditions." (Dkt. No. 24, ¶ 27.) AliphCom later changed its name to Jawbone, Inc. (*Id*.) Until its bankruptcy in 2017, AliphCom/Jawbone, Inc. was based in the NDCA. (Dkt. No. 25 at 3.) The former Chief Executive Officer ("CEO") and Chief Technology Officer ("CTO") of AliphCom are both located in the NDCA. (*Id*. at 4–5.)

All six of the named inventors on the asserted patents worked for AliphCom/Jawbone, Inc. in the NDCA, and at least three of them remain there. (*Id*. at 3–4.) None of the named inventors live in Texas. (*Id*.) The prosecuting attorneys were also based in the NDCA. (*Id*. at 4.)

## II.   LEGAL STANDARD

### a. Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.*, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).) If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*) The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*)

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "*clearly* more convenient" than the venue chosen by the plaintiff. (*Id.*) (emphasis added). Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*)

### III. ANALYSIS

#### a. This Case Could Have Been Brought in California

The first issue to consider is whether this case could have been brought in the transferee forum. Lab126, "which is part of Amazon and designed" the Accused Products, is in the NDCA. (Dkt. No. 25 at 6.) Further, Amazon has "many offices" in the NDCA. (*Id*.) Jawbone does not dispute that the case could have been brought in the NDCA. (*See generally* Dkt. Nos. 39, 49.) As such, the NDCA is a proper transferee district. Having found that the threshold requirement for transfer under § 1404(a) has been met, the Court now turns to the public and private factors to determine if Amazon has established that the NDCA is the clearly more convenient forum.

#### b. Private Interest Factors

##### 1. Relative Ease of Access to Sources of Proof

In considering the relative ease of access to sources of proof, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Amazon must show that transfer to the NDCA will result in more convenient access to such sources of proof. *See Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

Amazon contends that the evidence related to this case is concentrated at the Lab126 location in Sunnyvale, California. (Dkt. No. 25 at 7.) Such "evidence" includes the source code and technical documentation for all the Accused Products. (*Id.*) Amazon concedes that any relevant documents that are not located in the NDCA are located in Seattle but argues that because the Lab126 facility shares the same computer infrastructure as Amazon's Seattle offices, remote access to those documents is easier from Lab126 than from Texas. (*Id.*)

Amazon argues that there is no relevant evidence stored at its Fulfillment Center in this District. (*Id.*) Further, Amazon argues that any Amazon employees at facilities in this District have

no responsibility for the Accused Products, including the technology, marketing, or finances, and do not know how to access relevant materials in Sunnyvale or Seattle. (*Id.*)

In response, Jawbone points to its office in Marshall, Texas as the location of Jawbone's own "sources of proof," including "documents related to the Asserted Patents, marketing, contracts, distribution, and sales activities." (Dkt. No. 39 at 6.) The Marshall office also "houses Jawbone's products for distribution." (*Id.*)[2]

Jawbone does not identify any other sources of proof located in this District. (*See generally* Dkt. No. 39 at 6–8.) Instead, Jawbone posits that Lab126's technical documents and source code, although they might be "maintain[ed]" in Sunnyvale, are likely not "physically" stored in Sunnyvale. (*Id.* at 6.) In other words, Jawbone contends that even if the Lab126 documents "were physically located where they are 'maintained,' Amazon does not specify whether they are equally accessible from its Texas facilities." (*Id.* at 7.)

Amazon responds to Jawbone's arguments about "maintenance" of Amazon documents by pointing to the declaration of Amazon's Director of Audio Technology, Mr. Hilmes, who testified under oath that the technical documents for the Accused Products are maintained in Sunnyvale, that the "employees 'most knowledgeable about the design, development, and operation of' those products work" in the NDCA, and that "hard copy documents, such as lab notebooks, are stored in" NDCA along with relevant "[l]ocally saved electronic files." (Dkt. No. 48 at 1.) Mr. Hilmes also testified that the "relevant documents are not stored on any cloud server in Texas." (*Id.*)

As the Federal Circuit has noted, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the

---

[2] Amazon replies that Jawbone "never identifies the products or alleges they embody the patent claims[]" and notes that "[n]othing suggests that these products have any relevance." (Dkt. No. 48 at 1.) The Court notes that it is the *Amazon* products, and not those distributed by Jawbone, that are at issue in this case.

accused infringer, Amazon, maintains the evidence related to the Accused Products at its subsidiary's location in California. Jawbone does not dispute that the "bulk of the relevant evidence" will come from Amazon, but only disputes where such evidence is stored. (*See generally* Dkt. Nos. 39, 49.) However, aside from attorney argument casting doubt on the veracity of Amazon's declarations, Jawbone submits no evidence showing that the sources of proof related to the Accused Products in this case are located anywhere in Texas.

Moreover, Jawbone's focus on evidence relating to its *own* products is unpersuasive. Jawbone does not contend that it manufactures or distributes any products that embody the asserted patents. Jawbone admits that only one employee, the Vice President of Distribution, ever distributes product from Jawbone's Marshall office. (*See* Dkt. No. 56 at 34:1–20.)[3] Jawbone's briefing also seems to acknowledge that most, if not all, of the evidence relating to the prosecution and acquisition of the asserted patents will come from the inventors and other former employees of AliphCom. (*See, e.g.*, Dkt. No. 39 at 3.) Jawbone does not dispute that none of the inventors or AliphCom employees are in Texas and concedes that several of them are physically located in California. (*Id.*) Accordingly, this factor weighs in favor of transfer.

### 2. Availability of Compulsory Process

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has

---

[3] Jawbone stated that this employee occupies the Marshall office for approximately two days per month and travels from New York to do so. (*Id.*)

subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel attendance of a nonparty witness at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

In its Motion, Amazon names four categories of third-party witnesses that have relevant and material information to the claims and defenses in this case. (*See generally* Dkt. No. 25 at 8–11; *see also id*. at 2–5.) First, Amazon names the six inventors of the asserted patents, four of whom live in the NDCA and two of whom live outside of California, but not in Texas. (*Id*. at 3–4, 9.)[4] According to Amazon, the named inventors will be particularly relevant to this case because Jawbone "claims an invention date that precedes the earliest filing date in the patent's priority chain," and thus evidence regarding the inventors' activities preceding the filing of the patent applications will be highly relevant. (*Id*. at 9.)

Second, Amazon names the prosecuting attorneys for the asserted patents. (Dkt. No. 25 at 9; *see also id*. at 4.)[5] Amazon contends that at least five of the prosecuting attorneys, spread among two different law firms, are based in the NDCA including Mr. Scott Kokka, who will give important testimony related to his "handling [of] the prosecution of two asserted patents when they were abandoned." (*Id*. at 9.) According to Amazon, Mr. Kokka's testimony will be particularly relevant to Amazon's inequitable conduct defense. (*Id*.) Jawbone concedes that Mr. Kokka "could

---

[4] The named inventors include Nicholas Petit, Zhinian Jing, Andrew Einaudi, Eric Breitfeller, Gregory Burnett, and Alexander Asseily. (Dkt. No. 25 at 3–4.)
[5] The prosecuting attorneys include Richard Gregory, Barbara Courtney, Scott Kokka, Trueman Denny III, and Howard Yuan. (Dkt. No. 25 at 4.)

have knowledge that's relevant to trial and…testify at trial." (Dkt. No. 56 at 37:8–12.)

Third, Amazon identifies Hosain Rahman and Michael Luna, the former CEO and CTO of AliphCom, respectively. (Dkt. No. 25 at 4; *see also id*. at 9–10.) Amazon contends that Mr. Rahman will have knowledge regarding the valuation of the asserted patents, which is relevant to the determination of a reasonable royalty. (*Id*. at 9.) Amazon argues that because the Accused Products began selling in 2014, when Mr. Rahman was still the CTO of AliphCom and when AliphCom still owned the asserted patents, Mr. Rahman would have informative testimony related to the hypothetical negotiation based on his personal involvement in several transactions involving the asserted patents. (*Id*. at 9–10.) As to Mr. Luna, Amazon argues that he submitted declarations to the USPTO during prosecution of two asserted patents that form part of Amazon's inequitable conduct defense. (*Id*. at 10.) Amazon also contends that, as the person responsible for AliphCom's patent portfolio and technical implementation of AliphCom's products, "Mr. Luna would have knowledge of potential benefits provided by the patented technology, alternatives to this technology, and the state of the art at the time of the patents." (*Id*.) Both Mr. Rahman and Mr. Luna reside in the NDCA. (*Id*.)

Fourth, Amazon identifies former employees of Lab126 with knowledge of the functionality of the Accused Products. (Dkt. No. 25 at 10.)[6] These employees developed the audio signal processing in the Accused Products, including the source code for the accused voice activity detection algorithm on the Echo Buds and Echo smart speakers. (*Id*.) Two of the former employees are "named inventors on an Amazon patent" that describes such algorithms. (*Id*.) All three of these employees, although no longer employed by Amazon, are still located in the NDCA. (*Id*.)

In response, Jawbone does not name any third-party witness, other than those already

---

[6] The former Lab126 employees include Ziaozue (Cheryl) Li, Dan Harris, and Kuan-Chieh Yen. (Dkt. No. 25 at 2–3.)

named by Amazon, that it contends might be relevant at trial. (*See generally* Dkt. No. 39.) Instead, Jawbone argues that "key components of the Accused Products are supplied by Texas entities," including NXP, STMicroelectronics, and Texas Instruments, which allegedly supply processors for the Accused Products. (*Id*. at 13; *see also* Dkt. No. 56 at 35:9–17.) However, rather than identify any specific witnesses from these companies, Jawbone states that it is "likely that they key audio processing functionality of the Asserted Claims is performed by or within those components" such that testimony from the manufacturers "will likely be required at trial." (Dkt. No. 39 at 13.)

Jawbone also takes issue with Amazon's identified categories of third-party witnesses as "not show[ing] that any will be necessary for trial." (Dkt. No. 39 at 10.) As to Amazon's first category—the named inventors—Jawbone focuses on Mr. Burnett, who lives in Omaha, Nebraska, and notes that Mr. Burnett would "prefer" to testify in Marshall because he flies his own airplane and "he can fly himself from his home in Omaha to Harrison County Airport in Marshall." (*Id*. at 3, 10.) Jawbone also identifies Mr. Asseily and Mr. Petit, who are both named inventors currently located in Europe and beyond the subpoena power of either this Court or the NDCA. (*Id*. at 10–11.) The remaining named inventors, according to Jawbone, are only listed on four patents, and "Amazon does not identify any information that these inventors have that their co-inventor, Dr. Burnett, does not have." (*Id*. at 11.) Amazon responds that "[e]very properly named inventor will have unique testimony relevant to his own contributions to the claimed inventions," and notes that Jawbone does not dispute that half of the named inventors reside in NDCA. (Dkt. No. 48 at 1–2.)

As to Amazon's second category of third-party witnesses, the prosecuting attorneys, Jawbone notes that Mr. Gregory, who signed the initial applications for many of the asserted patents, has a California Bar registration which lists Houston as his residence. (Dkt. No. 39 at 11.)

As a result of his signature on the original patent applications, Jawbone contends that it is Mr. Gregory who is "likely to have relevant information regarding the conception and diligent reduction to practice of those patents." (*Id*.) Amazon also identifies Mr. Kokka, based in the NDCA, as a prosecuting attorney with relevant information to Amazon's inequitable conduct defense. (Dkt. No. 25 at 9.) In response, Jawbone attacks the merits of the inequitable conduct defense as "unfounded" and contends that relevant evidence, if any exists, would come from AliphCom's former CTO, Mr. Luna, or a different attorney. (Dkt. No. 39 at 11.) At the hearing, Jawbone admitted that Mr. Kokka "could" have knowledge relevant to the inequitable conduct defense. (Dkt. No. 56 at 37:8–12.)

Jawbone argues that Mr. Luna, the former CTO of AliphCom, is a willing witness and thus need not be addressed under this factor. (Dkt. No. 39 at 12.) As to AliphCom's former CEO, Mr. Rahman, Jawbone merely argues that Amazon "fail[ed] to identify any specific information that Mr. Rahman possesses that is not also known by Mr. Luna." (*Id*.) Jawbone makes a similar argument against Amazon's identification of former Lab126 employees—namely, that "Amazon does not specify that these former employees have any specialized knowledge that its current employees lack," speculating that "it is likely that the former employees' knowledge is merely cumulative of Amazon's internal witnesses." (*Id*.)

It is noteworthy that, in contrast to the fourteen third-party witnesses identified by Amazon, Jawbone has not identified any third-party witnesses that it will compel to attend trial other than unnamed witnesses from companies that "likely" produce the components on which the accused functionalities operate. (Dkt. No. 39 at 13.) Moreover, aside from the speculative component manufacturer witnesses, Jawbone has identified only one witness—Mr. Gregory, a prosecuting

11

attorney—for whom the EDTX's subpoena power might be useful.[7] In contrast, Amazon has identified at least four categories of third-party witnesses that it will seek testimony from, all of whom work or reside in NDCA. Therefore, this factor weighs in favor of transfer.

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as courts applying Fifth Circuit precedent have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted in* A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

Amazon argues that this factor favors transfer because the ten technical witnesses it

---

[7] Amazon points out that although Mr. Gregory resides in Houston, he "undisputedly has an office in NDCA" so he "'transacts business' there and is subject to subpoena in NDCA." (Dkt. No. 48 at 2.) However, Jawbone argued at the hearing that Mr. Gregory's California office recently closed and that he now works in Texas. (Dkt. No. 56 at 37:4–7.)

identified as relevant to this case are employed by Amazon and work in the NDCA. (Dkt. No. 25 at 11.) Amazon also argues that the witnesses with relevant financial and marketing knowledge, who are also employed by Amazon, would have more convenient travel from Seattle to the NDCA than to the EDTX. (*Id*.) Amazon notes that Jawbone "has not identified any party witnesses in this District, or anywhere else, who have relevant or material testimony to offer." (*Id*.)

In opposing transfer, Jawbone argues that Amazon has not identified all relevant witnesses. (Dkt. No. 39 at 8.) To rebut Amazon's declarations naming relevant witnesses located in the NDCA, Jawbone located, via LinkedIn, the profiles of "several Amazon employees who *appear* to have relevant information who reside in this District." (*Id*.) (emphasis added). Jawbone also identifies, again via LinkedIn searches, various Amazon employees located in Texas who work on the Amazon Echo. (*Id*. at 9.) Amazon contends that these Amazon employees located in Texas "have no relevance to this case because none of them work[] on the accused microphone signal processing technology" and none of them have "access to the relevant source code." (Dkt. No. 48 at 3–4.) Jawbone responds that by characterizing the patented technology as relating only to "microphone signal processing," Amazon unduly narrows the scope of the asserted patents. (Dkt. No. 56 at 29:41–24.)

Jawbone also claims that Amazon has relevant witnesses in Seattle, outside of the NDCA's subpoena power, which Amazon did not identify in its Motion. (Dkt. No. 39 at 9.) Specifically, Jawbone names "the inventors of Amazon's U.S. Patent No. 9,111,542 (the "'542 patent"), which cites to the same patent family as [one of the asserted patents]"—namely, Gregory Hart and Jeffrey Bezos. (*Id*.) According to Jawbone, "the '542 patent's citation to the Patents-in-Suit strongly suggests that it covers audio processing similar to the Asserted Patents and the inventors' location in Seattle suggests that Amazon conducts related activities there." (*Id*. at 9–10.)

Finally, Jawbone emphasizes that two third-party witnesses are "willing to travel to this District." (Dkt. No. 39 at 10.) Specifically, Dr. Burnett, a named inventor, would "prefer to travel to this District" due to the ease of flying his own plane from Omaha, Nebraska to Marshall Texas. (*Id*. at 3, 10.) Additionally, Mr. Luna, the former CTO of AliphCom, would be "willing to travel to this District" from his home, which is admittedly in the NDCA. (*Id.* at 10; *see also* Dkt. No. 25 at 10.)

The Court is not persuaded by Jawbone's suggestion that, despite the various declarations submitted by Amazon with its Motion, Amazon has failed to identify all the relevant witnesses. Amazon has identified, by name and job role, ten technical witnesses that are employed by Amazon, possess knowledge relevant to the claims and defenses in this case, and work in the NDCA. (Dkt. No. 25 at 11.) In contrast, Jawbone searched LinkedIn for Amazon employees in this District and made its own judgment that such employees are relevant to this case. Jawbone even alleges that Mr. Luna, the former CTO of AliphCom, who admittedly lives in the NDCA, would find, on balance, that "Marshall [is] more convenient than NDCA." (*See generally* Dkt. No. 39 at 3, 10.) As a result, the only "willing" witness that Jawbone identifies is Dr. Burnett, a named inventor who lives in Nebraska. (Dkt. No. 39 at 10.) However, "a Nebraska-based witness's desire to fly in his private plane non-stop is no reason to force the overwhelming majority of witnesses in NDCA to undertake burdensome travel to this District." (Dkt. No. 48 at 4.) All these considerations taken together lead the Court to find that this factor weighs in favor of transfer.

### 4. All Other Practical Problems

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Amazon argues that this factor favors transfer because Jawbone "sued Amazon and

Samsung in this District while suing Apple and Google over the same asserted patents in the Western District of Texas," further arguing that "Samsung, Google, and Apple have all expressed their intent to file motions to transfer to the [NDCA] based on that district's obvious convenience advantages." (Dkt. No. 25 at 12.) In response, Jawbone contends that Amazon "lacks any basis to speculate that all four cases will be successfully transferred" to the NDCA. (Dkt. No. 39 at 13.)

The Court agrees with Jawbone and finds that Amazon's "judicial economy" argument is speculative. Accordingly, this factor weighs slightly against transfer and is, at most, neutral.

### c. Public Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

The parties agree that this factor weighs, at least slightly, against transfer. (Dkt. No. 25 at 15; Dkt. No. 39 at 14.) The Court agrees that this factor weighs slightly against transfer.

#### 2. Local Interest in Having Localized Interest Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Amazon argues that the Accused Products "are strongly connected to the Northern District of California, where they were designed and developed[,]" such that the NDCA "has an interest in adjudicating this dispute regarding technology created within its jurisdiction." (Dkt. No. 25 at 14.) Amazon argues that the "lawsuit calls into question the 'work and reputation' of California executives, engineers, and attorneys who are related not just to Amazon, but to the asserted patents themselves." (*Id*.) For example, Lab126, which developed all the Accused Products, has been located in the NCDA for over fifteen years. (*Id*.) Amazon has multiple offices in the NDCA where it employs over 8,000 people. (*Id*.) AliphCom, where the "technology in the asserted patents was developed," was in the NDCA, which is also where the majority of the inventors and prosecuting attorneys remain. (*Id*.)

15

Amazon argues that Jawbone has no material connection to this District, since Jawbone "was founded as a Texas LLC less than four months before it started its litigation campaign." (Dkt. No. 25 at 14.) Amazon notes that in Jawbone's formation filings with the State of Texas, the only identified executive lives and works in Baltimore, which is also the site of Jawbone's mailing address. (*Id*. at 15.) Thus, Amazon contends that Jawbone's "only ties to this District are its choice of formation in Texas and the purported space it allegedly occupies in its counsel's office building," which, according to Amazon, are merely a "construct for litigation." (*Id*.)

In response, Jawbone argues that this factor weighs against transfer because Jawbone "is a Texas entity that maintains an office in this District and receives and distributes products from this District." (Dkt. No. 39 at 13–14.) Jawbone also argues that Amazon has employees "in multiple locations in Texas that perform work related to designing and manufacturing the Accused Products." (*Id*. at 14.) Jawbone notes Amazon's assertion that this case calls into question the "work and reputation" of individuals in California but argues that Amazon "fail[ed] to identify any specific 'employees whose reputations or work would be called into question as it relates to this action.'" (*Id*.) The Court disagrees.

On balance in this case, the Court finds that the NDCA has a stronger localized interest than EDTX. Accordingly, this factor favors transfer.

### 3. Familiarity of the Forum with Governing Law

Amazon argues that this factor is neutral. (Dkt. No. 25 at 15.) Jawbone argues, without explanation, that this factor does not favor transfer. (Dkt. No. 39 at 14.) The Court finds that this factor is neutral.

### 4. Avoidance of Unnecessary Problems of Conflicts of Law

Amazon argues that this factor is neutral. (Dkt. No. 25 at 15.) Jawbone argues, without explanation, that this factor does not favor transfer. (Dkt. No. 39 at 14.) The Court finds that this factor is neutral.

### d. Alternative Motion to Transfer

On the last page of its opposition brief, Jawbone requests that, "to the extent this Court determines transfer is warranted, it transfer this case to the Western District of Texas." (Dkt. No. 39 at 15.) The Court declines to consider this request given that the entirety of the parties' briefing was focused on the Northern District of California, and none of the briefing related to the Western District of Texas.

## IV.   CONCLUSION

In light of the foregoing, Amazon has established that, in this particular case, the Northern District of California is the clearly more convenient forum. Accordingly, Defendants' Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 25) is **GRANTED**. Jawbone's Opposed Motion for Leave to Supplement the Record in Support of Jawbone Innovations, LLC's Opposition to Defendants Amazon.com, Inc. and Amazon.com Services, Inc's Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (the "Motion to Supplement") (Dkt. No. 54) is accordingly **DENIED AS MOOT**.[8]

---

[8] Jawbone's Motion to Supplement seeks to add discussion of a declaration from Mr. Kokka, the prosecuting attorney, filed in a co-pending case brought by Jawbone in this District. (*See generally* Dkt. No. 54 at 1–2.) Jawbone represents that Mr. Kokka has expressed willingness to travel to this District for trial. (*Id*. at 2.) While this representation is relevant to the Court's analysis, Mr. Kokka's willingness to travel to this District would not change the Court's ultimate determination in this case.

**So ORDERED and SIGNED this 21st day of September, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE