Alfred R. Fabricant
ffabricant@fabricantllp.com
Peter Lambrianakos
plambrianakos@fabricantllp.com
Vincent J. Rubino, III
vrubino@fabricantllp.com
Richard Cowell
rcowell@fabricantllp.com
Justine Minseon Park
apark@fabricantllp.com
Jacob Ostling
jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Benjamin T. Wang
bwang@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

Attorneys for Plaintiff
*Jawbone Innovations, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JAWBONE INNOVATIONS, LLC, | Case No. 3:22-cv-06727-TLT |
| *Plaintiff*, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| AMAZON.COM, INC and AMAZON.COM SERVICES INC., | Date: February 16, 2023<br>Time: 2:00 PM<br>Dept:<br>Judge: The Hon. Trina L. Thompson |
| *Defendants*. | |

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

Plaintiff Jawbone Innovations, LLC ("Plaintiff" or "Jawbone") and Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, "Defendants" or "Amazon") hereby submit this Joint Case Management Statement pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, Patent Local Rule 2-1, the Standing Order for All Judges of the Northern District of California titled "Contents of Joint Case Management Statement," the Clerk's Notice Setting Zoom Hearing and Scheduling Initial Case Management Conference (Dkt. 79), in advance of the Initial Case Management Conference scheduled for February 16, 2023.

## 1.    JURISDICTION AND SERVICE

Plaintiff Jawbone's Amended Complaint against Defendants alleges infringement of U.S. Patent Nos. 8,019,091 (the "'091 Patent"); 7,246,058 (the "'058 Patent"); 8,280,072 (the "'072 Patent"); 8,321,213 (the "'213 Patent"); 8,326,611 (the "611 Patent"); 10,779,080 (the "'080 Patent"); 11,122,357 (the "'357 Patent"); 8,467,543 (the "'543 Patent"); and 8,503,691 ("the '691 patent") (collectively, the "Patents-in-Suit").

On November 29, 2021, Jawbone filed this patent infringement action in the Eastern District of Texas, alleging infringement of eight of the Patents-in-Suit.  *See Jawbone Innovations, LLC v. Amazon.com, Inc.*, No. 2:21-cv-00435-JRG, Dkt. 1 (E.D. Tex. Nov. 29, 2021) ("EDTX Case"). Jawbone filed an amended complaint on February 28, 2022 alleging infringement of a ninth patent. (Dkt. No. 24.)  On March 10, 2022, Amazon filed a motion to change venue pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 25.)  The district court for the Eastern District of Texas granted Amazon's motion to change venue on September 21, 2022 (Dkt. No. 60) and transferred the case on November 1, 2022.

The Parties do not dispute personal jurisdiction or venue and all parties have been served.

### A.    Plaintiff's Statement:

Plaintiff contends that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1138(a).

### B.    Defendant's Statement:

Amazon does not concede that this Court has subject matter jurisdiction because, on

1   information and belief, Plaintiff does not own exclusionary rights to the Patents-in-Suit.  As a result,

2   Plaintiff lacks standing and the Court lacks subject matter jurisdiction.

3   **2.     FACTS**

4       **A.      Plaintiff's Statement:**

5       Jawbone filed a patent infringement action in the Eastern District of Texas alleging that

6   Amazon infringes the Patents-in-Suit.  *See* EDTX Case, Dkt. 1.

7       Amazon has manufactured, used, marketed, distributed, sold, offered for sale, and exported

8   from and imported into the United States products and software that infringe the Patents-in-Suit

9   including, but not limited to, the Amazon's smart home devices, including smart speakers, smart

10  displays, hands-free streaming devices, and ear buds (the "Accused Products").  The Accused

11  Products include functionalities for noise suppression, voice activity detection, wake word detection,

12  and beamforming.  The Accused Products also include the functionalities for the detection,

13  transmission, and recordation of speech.

14      The technology of the Patents-in-Suit was developed by AliphCom d/b/a Jawbone in 1998.

15  AliphCom set out to develop a noise reducing headset that would allow soldiers to communicate

16  better in combat conditions.  In 2002, AliphCom won a contract with the Defense Advanced

17  Research Projects Agency to research noise suppression techniques for the United States military.

18  In 2004, AliphCom launched a mobile headset called the "Jawbone" which included the innovative

19  noise-suppression technology that AliphCom developed for the military.  This technology virtually

20  eliminated background noise while increasing the volume of the speakers' voices.  AliphCom

21  followed with a Bluetooth version of the "Jawbone" in 2008, which was sold in the Apple Store.

22      AliphCom subsequently expanded its product offerings into Bluetooth speakers and

23  wearables, such as health tracking devices.  Unfortunately, due to the intensely competitive

24  marketplace, AliphCom was forced into liquidation in 2017.  Following AliphCom's liquidation, a

25  host of technology companies including Apple, Samsung, Google, and Fitbit were identified as

26  potential buyers of AliphCom's U.S. Patents.  Amazon was contacted during this time regarding the

27  value of the Patents-in-Suit, including regarding Amazon's infringement of the Patents-in-Suit.

28

RUSS AUGUST & KABAT

2

**JOINT CASE MANAGEMENT STATEMENT**

1    In addition to licensing AliphCom's former audio patent portfolio, Jawbone is in the business

2  of researching and developing audio products, including true wireless stereo devices. The lead

3  inventor of many of the Jawbone patents, Dr. Gregory Burnett, is Jawbone's Chief Scientist.

4    Amazon directly infringes each of the Patents-in-Suit by, among other things, making, using,

5  selling, offering to sell, and importing into the United States the Accused Products.  *See* EDTX Case,

6  Dkt. 1 ¶¶ 30-161.  Amazon induces infringement by, among other things, instructing or otherwise

7  inducing end users of the Accused Products that incorporate the Accused Products to directly

8  infringe by using or selling those products or by making, using, or selling products that incorporate

9  the Accused Products. *Id.*, ¶¶ 57, 58, 74, 75, 86, 87, 99, 100, 113, 114, 128, 129, 141, 142, 157, 158.

10    Additionally, Jawbone denies Amazon's contentions that the Patents-in-Suit are invalid

11  under one or more grounds specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.  Jawbone is not

12  aware of any prior art that renders the claims of the Patents-in-Suit invalid by anticipation or

13  obviousness, and the Patents-in-Suit cover patentable subject matter and comply with all of the

14  statutory requirements of 35 U.S.C. §§ 101 and 112.  Jawbone also denies that Amazon is or will be

15  entitled to any relied, including relief under 35 U.S.C. § 285.

16    Amazon filed an immediate motion to transfer the EDTX Case which was granted in

17  September 2022. Discovery was in its early stages at the time of transfer, but even as of that date,

18  Amazon's production of source code and documents and its answers to interrogatories were

19  deficient. Amazon failed to make a fulsome source code production, its technical document

20  production and answers to interrogatories were incomplete. Significant discovery into the Accused

21  Products remains.

22    Jawbone filed a case against Defendants Samsung Electronics Co., Ltd. and Samsung

23  Electronics America, Inc. in the Eastern District of Texas that progressed through fact and expert

24  discovery and dispositive motions before it was dismissed as a result of settlement. *See Jawbone*

25  *Innovations LLC v. Samsung Elec. Co., Ltd.*, Case No. 2:21-cv-00186-JRG, Dkt. 276 (E.D. Tex.

26  Dec. 28, 2022).

27    Jawbone filed cases against Defendants Apple, Inc. and Google LLC in the Western District

RUSS AUGUST & KABAT

3

**JOINT CASE MANAGEMENT STATEMENT**

of Texas. The case against Apple Inc. has since been dismissed as a result of settlement and the case against Google LLC was transferred to the Northern District of California. *See Jawbone Innovations LLC v. Apple Inc.*, Case No. 6:21-cv-00984-ADA, Dkt. 111 (W.D. Tex. Dec. 26, 2022); *Jawbone Innovations LLC v. Google LLC*, Case No. 6:21-cv-00985-ADA, Dkt. 105 (W.D. Tex. Feb. 1, 2023).During the pendency of the *Google* case, the court issued a claim construction ruling that found certain claim terms to be indefinite.  The court's order did not set forth the factual or legal basis for its rulings. Jawbone filed a motion for reconsideration of portions of that ruling which was still pending at the time of transfer. The court did not issue an order or judgment of invalidity of any claim.

All of the *inter partes* reviewed filed by Apple and Samsung were terminated following settlement of those actions.  Google filed twelve *inter partes* review petitions, but three were denied institution.  Currently, there are no instituted IPRs against the '611 Patent.  Amazon more recently filed 10 IPR petitions.  The deadlines for the patent owner's preliminary responses are in March and April 2023, and institution decisions are not due until June or July 2023.

**B.     Defendant's Statement:**

The plaintiff in this case is Jawbone Innovations, LLC, a patent licensing company with no relationship to the company (AliphCom/Jawbone) that purportedly developed the technology described in the Patents-in-Suit.  Plaintiff purportedly acquired the rights to the asserted patents at some point after AliphCom/Jawbone's liquidation.   Plaintiff's business is suing for patent infringement.  Shortly after establishing an office in the space occupied by its local counsel in Texas, Plaintiff sued Samsung, Apple, Google, and later Amazon for patent infringement.

In the months that followed, the defendants all filed *inter partes* review ("IPR") petitions at the Patent Office, arguing that the Patents-in-Suit are invalid and requesting that the Patent Office review the validity of the patents.  The Patent Office found that Google had shown that the asserted patent claims are reasonably likely to be invalid, and instituted nine IPR trials.  Those trials involve eight of the nine asserted patents.  Amazon's IPR petitions, which challenge the validity of all nine asserted patents, are pending.  The Patent Office will issue its institution decisions in those

RUSS AUGUST & KABAT

4

**JOINT CASE MANAGEMENT STATEMENT**

proceedings this summer.  These IPR proceedings may result in the PTO canceling all the asserted patent claims, which would completely dispose of this case.

While the IPR petitions were pending at the Patent Office, the district court for the Western District of Texas ("WDTX") proceeded to claim construction in the Google case.  After full briefing and a claim construction hearing, the WDTX held that claims in five of the asserted patents are invalid because they fail to satisfy the statutory requirement for definiteness.  That case was recently transferred to this District.

In view of the many instituted IPR trials, Amazon moved to stay this litigation pending final decisions in at least the IPRs filed by Google.  (*See* Dkt. No. 85.)  It would be a waste of resources for the parties to litigate, and for this Court to invest its time presiding over, this multi-patent case when the Patent Office may invalidate all of the asserted claims and thereby render the entire litigation moot.  (*Id.*)

The Patents-in-Suit are invalid.  They claim inventions that were neither novel nor nonobvious, and they are therefore invalid under 35 U.S.C §§ 102 and 103.  As the WDTX found, many of the patent claims are invalid as indefinite under § 112.  Many are also invalid under § 112 for lack of written description and lack of enablement.  Many of the asserted claims are also invalid under § 101 because they claim patent-ineligible subject matter.  In addition, at least two of the patents are unenforceable due to inequitable conduct and unlawful revival because the patent applications that led to those patents were abandoned at the Patent Office and subsequently revived based on a false declaration.

Based on the limited information available to Defendants at this time, the Patents-in-Suit also appear to be invalid for improper inventorship.  The inventions claimed in the Patents-in-Suit appear to have been developed, at least in part, by Drs. John Holzrichter and/or Larry Ng, who worked with at least one of the named inventors at Lawrence Livermore National Laboratory.  Despite repeated requests from Amazon, Plaintiff has not yet provided Defendants with the discovery necessary for Defendants to fully evaluate this issue.  However, based on publicly available information, it appears that at least Drs. Holzrichter and/or Ng should have been named as inventors.  As inventors, Drs.

RUSS AUGUST & KABAT

Holzrichter and Ng have the right to grant licenses to the patents.  And, as a result, Plaintiff does not have exclusionary rights to the Patents-in-Suit and consequently lacked standing to bring this lawsuit.

Amazon denies that it, or its customers, infringe any claim of any Patent-in-Suit.  The Patents-in-Suit describe and claim headsets and sound processing methods that bear no resemblance whatsoever to the technology used in the allegedly infringing Amazon Echo Buds headphones, let alone Amazon's non-headphone devices such as the Amazon Echo.

The parties will need to litigate these complicated validity, ownership, standing, and infringement issues *only if* the asserted claims survive the IPRs filed by Google and Amazon. Accordingly, this case should be stayed pending final decisions in those IPRs.  (Dkt. No. 85.)

**3.    LEGAL ISSUES**

The parties agree that the principal issues are likely to be as follows:

1.    Whether any Defendant has infringed the Patents-in-Suit in violation of 35 U.S.C. §§ 271(a) and (b);

2.    Whether the Patents-in-Suit meet the conditions for patentability and enforceability, including but not limited to satisfying all of the requirements set forth in the provisions of 35 U.S.C. §§ 101, 102, 103, and 112;

3.    The scope and proper construction of the asserted claims of the Patents-in-Suit;

4.    Inventorship and ownership of the Patents-in-Suit, including whether Plaintiff has standing;

5.    If the Patents-in-Suit are found to be infringed and valid, the amount, if any, of Jawbone's damages and any enhanced damages under 35 U.S.C. § 284; and

6.    Whether attorneys' fees, costs, or expenses are recoverable by Jawbone or Amazon under 35 U.S.C. §§ 284 and/or 285.

**4.    MOTIONS**

Defendants filed a motion to stay pending parallel proceedings and to vacate the case management conference.  (Dkt. No. 85.)  The hearing on that motion is scheduled for March 21,

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

2023.  Amazon also anticipates that it may file a motion to dismiss for lack of subject matter jurisdiction based on Plaintiff's lack of exclusionary rights, as well as a motion for judgment on the pleadings based on lack of patent-eligible subject matter under 35 U.S.C. § 101.

The parties each anticipate that they may file one or more motions for summary judgment and/or *Daubert* motions at the appropriate time, and they reserve the right to file additional motions as the case develops and the need arises. The parties also anticipate that they will file other motions (e.g., discovery, pre-trial, trial, and post-trial) at the appropriate time.

**5.     AMENDMENT OF PLEADINGS**

Defendants anticipate amending the pleadings to include the affirmative defense of invalidity due to improper inventorship.  To date, Plaintiff has provided no discovery on this issue.

**6.     EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     DISCLOSURES**

The parties exchanged initial disclosures in the EDTX Case on April 6, 2022.

**8.     DISCOVERY**

**A.  Discovery Taken to Date**

The Parties have engaged in some written discovery and document productions. Plaintiff served its First Set of Interrogatories to Defendants on April 14, 2022 and Defendants provided their objections and responses on May 30, 2022.  Document production is not yet complete.  No depositions have been taken.  No requests for admission have been served.  At this time, discovery is incomplete and the parties anticipate substantial additional discovery pursuant to the scope identified in Section 8.B below.

**B.  Scope of Anticipated Discovery**

The Parties agree that fact discovery is needed on all issues raised in Section 3 above,

RUSS AUGUST & KABAT

7

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

including at least the following subjects:

- The Patents-in-Suit;
- The file history, prosecution, and priority date of the Patents-in-Suit;
- Ownership of the Patents-in-Suit;
- Conception and reduction to practice of the alleged inventions claimed in the Patents-in-Suit;
- Amazon's knowledge of the Patents-in-Suit;
- Jawbone's licensing practices and activities, and/or attempts to license or sell the Patents-in-Suit;
- Prior art in the field and the validity or invalidity, and enforceability or unenforceability, of the Patents-in-Suit;
- The allegedly infringing functionality in the accused products;
- Amazon's development, production, marketing and sales of the Accused Products;
- Amazon's affirmative defenses;
- The inventors of the Patents-in-Suit;
- Any attempts by Jawbone or any predecessor to make and sell products purportedly embodying the Patents-in-Suit, including any purported marking of such products;
- The basis for the determination of a reasonable royalty for Amazon's infringement of the Patents-in-Suit, if any; and
- Amazon's patent licensing practices and activities related to the allegedly infringing functionality.

Plaintiff believes that the following additional issues require discovery:

- Amazon's prosecution of patents citing the Patents-in-Suit or related publications;
- Amazon's business practices concerning procurement of intellectual property associated with its products and services; and
- Amazon's business practices concerning patent clearance, freedom to operate, and due diligence associated with its products and services.

8

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

### C.  Protective Order

The parties agree that a protective order will be necessary in this case given the sensitive and proprietary information that will be exchanged during discovery. The parties are currently negotiating what, if any, modifications should be made to this District's Model Protective Order for Patent Cases and will submit a final proposed protective order to the Court for entry in this case with a copy of the document in Word format.  In the meantime, the parties agree to abide by the terms of the Protective Order entered by the EDTX for documents and information produced by the parties in EDTX while the case was pending in that District.  (Dkt. No. 44.)

### D.  Report on Stipulated E-Discovery Order

The parties have reviewed the ESI Guidelines in this District and met and conferred concerning ESI. The parties will jointly submit any proposed modifications to the Model Stipulation & Order re: Discovery of Electronically Stored Information for Patent Litigation available on the Court's website at https://www.cand.uscourts.gov/eDiscoveryGuidelines, to the extent they have good cause to deviate from the ESI Guidelines.

### E.  Issues Concerning Claims of Privilege or of Protection as Trial-Preparation Materials

The parties agree that privileged communications and work product generated after the filing of the complaint in the transferred EDTX Action between a party to this case and its counsel of record in either the Eastern District of Texas or above-captioned case need not be logged. The limitations set forth herein shall be without prejudice to either party later seeking further limitations on privilege log requirements.

The parties also agree that issues regarding the inadvertent production of privilege or work product material shall be addressed as provided in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Protective Order to be entered in this case.

### F.  Proposed Changes to the Limitations on Discovery

The Parties do not believe that any changes to the disclosures under Rule 26(a) are necessary, but propose the following modifications to discovery.  For purposes of this section, Jawbone is a

"side" and the defendants, collectively, are a "side."

   *i.*  *Written Discovery*

    a. <u>Requests for Admission</u>

  Each side may serve 40 requests for admission on the other side.   In addition, each side may serve a reasonable number of requests for admission that seek an admission as to (a) the authenticity of a particular document or thing, (b) the admissibility of a particular document or thing, and/or (c) whether a document qualifies as a "printed publication" or other prior art as of a certain date under 35 U.S.C. § 102.

    b. <u>Interrogatories</u>

  The Parties propose allowing a limit of 25 interrogatories per side.

   *ii.*  *Depositions*

  The parties agree that the following limits will apply to fact depositions in this case:

    (a) Each side may take up to 60 total deposition hours of the other side (inclusive of both 30(b)(1) and 30(b)(6) depositions);

    (b) Defendants may depose each inventor named on the face of the Patents-in-Suit, in their personal capacity, for up to 7 hours of deposition per inventor; and

    (c) In addition to (a) and (b), each side may take up to 60 hours of non-inventor third party depositions.

  The parties agree that depositions of experts do not count against these limits.   The parties further agree that, absent a showing of good cause, each deposition will be limited to no more than 7 hours.  Any party may later move to modify these limitations for good cause.

**G.  Expert Discovery**

  The parties agree that the protections provided in Federal Rule of Civil Procedure 26(b)(4)(B) and (C) will equally apply to expert declarations as they do to expert reports, including both drafts of declarations and communications related to declarations. Pursuant to Federal Rule of Civil Procedure 26(b)(4), draft expert reports, notes, outlines, and any other writings leading up to an expert's final report(s) are exempt from discovery. In addition, all communications with and all

**JOINT CASE MANAGEMENT STATEMENT**

materials generated by a testifying expert with respect to his work on this action are exempt from discovery unless relied upon by the expert in forming his or her opinions. If an expert produces a report, the expert must produce his or her final report and all materials on which he or she relied.

The parties agree that depositions of experts shall not count toward the above limitations on depositions.

**H. Any Other Orders that the Court Should Issue Under FRCP 26(c) or Under FRCP 16(b)**

i. *E-mail Service*

The parties consent to service by electronic means as set forth in FRCP 5(b)(2)(e), including service by e-mail and via other widely used electronic file transfer services.  Service by e-mail will be treated as service by hand delivery.  The parties agree that service by e-mail by 11:59 P.M. Pacific Time on a given day will be treated as service by personal delivery that day.  Notwithstanding the foregoing, the parties further agree that documents filed publicly through the Court's ECF system need not be separately served by e-mail, and that ECF filing constitutes personal service as of the date and time such document was filed, and that documents filed under seal or manually must be served by e-mail within 3 hours of a related ECF filing, and that the e-mail service of such documents shall relate back to the time of the related ECF filing.

ii. *Electronic Mail and Communications*

The parties acknowledge the burden of discovery involving emails and other forms of electronic communication and agree to (a) abide by the Northern District of California's E-Discovery Guidelines, and (b) meet and confer regarding any proposed modifications to the Court's Model Stipulation & Order Re: Discovery of Electronically Stored Information for Patent Litigation ("Model ESI Stipulation"). The parties agree that forms of electronic communication other than emails—such as text messages, voicemails, tapes, and other messaging applications (e.g., Skype, Skype for Business, Slack)—need not be preserved.

**9. CLASS ACTIONS**

Not applicable.

RUSS AUGUST & KABAT

10.     **RELATED CASES**

The Patents-in-Suit have also been asserted in the following cases:

- *Jawbone Innovations, LLC v. Apple Inc.*, No. 6:21-cv-00984-ADA (W.D. Tex.) (dismissed);

- *Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA (W.D. Tex.) (now transferred to N.D. Cal. as No. 5:23-cv-00466); and

- *Jawbone Innovations, LLC v. Samsung Elec. Co., Inc. et al.*, No. 2:21-cv-00186-JRG-RSP (E.D. Tex.) (dismissed).

The following petitions for *inter partes* review ("IPRs") are pending:

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00604 (Institution Denied, Request for Rehearing Pending);

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00623;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00630;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00649;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00797;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00888 (Institution Denied, Request for Rehearing Pending);

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-00889 (Institution Denied, Request for Rehearing Pending);

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-01027;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-01059;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-01060;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-01061;

- *Google LLC v. Jawbone Innovations, LLC*, IPR2022-01124;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00216;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00222;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00251;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00253;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00275;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00276;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00279;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00284;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00285;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00286;

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00559; and

- *Amazon.com, Inc. v. Jawbone Innovations, LLC*, IPR2023-00561.

**11.    RELIEF**

    **A.    Plaintiff's Statement:**

Amazon does not publicly disclose its revenue or sales for its Accused Products. Jawbone cannot therefore provide an accurate range of provable damages at this time. Also, Jawbone does not yet have the benefit of independent expert analysis of Amazon's damages information. However, at the minimum, Jawbone is seeking monetary damages at least in the form of a reasonable royalty. At this time, it is too early to determine whether Jawbone will seek damages as to convoyed or collateral sales.

In the absence of expert opinion (which is premature at this time), Jawbone has not determined which methodology or methodologies (including the hypothetical negotiation method described in *Georgia Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), the analytic method, the income method, the market method, etc., or some combination thereof) should be used in determining a reasonable royalty in this case, but as the *Georgia Pacific* factors encompass in some respects all of these methods, this response will reference the *Georgia Pacific* factors in discussing the determination of a reasonable royalty. At this time, Jawbone expects the royalty base will include revenue generated from the Accused Products, including revenue from the sales or licensing of the accused products as appropriate. Jawbone may further apportion this royalty base to

RUSS AUGUST & KABAT

a smallest saleable patent-practicing unit and may further apportion the royalty base to account for unpatented features, which is the subject of discovery not yet received from Amazon. Jawbone expects the date and parties to the hypothetical negotiation in this case will be determined by the date of each defendant's first infringement, which is the subject of discovery not yet received from Amazon.

Any contentions regarding a reasonable royalty at this stage of the litigation must necessarily be preliminary, both because the valuation of patent damages is an issue subject to expert analysis, and because conclusions regarding a reasonable royalty requires consideration of all, or at least a substantial portion, of the relevant evidence, and Jawbone does not yet have access to all relevant evidence. The importance of expert analysis to the determination of a reasonable royalty is expressed, for example, in the fact that "[t]he opinion testimony of qualified experts" is expressly included in *Georgia Pacific* as Factor 14. 318 F. Supp. at 1120. An expert opinion on damages would be premature at this point because Amazon has to date produced very limited (if any) discovery of the evidence necessary to form such an opinion. For example, Jawbone has not yet conducted any depositions of knowledgeable witnesses of Amazon.

The importance of considering the relevant evidence as a whole in determining a reasonable royalty is reflected in the comprehensive nature of the *Georgia Pacific* factors, which require a hypothetical negotiation in which the parties are privy to all relevant information extant at the time of the negotiation, and much information occurring thereafter. Moreover, the absence of evidence may be key to a damages analysis, and it is difficult to establish absence before the end of fact discovery. *See, e.g., ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) (evaluating reasonableness of reliance on settlement agreement based on the absence of better evidence of a reasonable rate). Precise damages calculations will be subject to expert testimony and must await the complete disclosure and review of documents and other discovery from Amazon in addition to expert testimony.

**B.      Defendant's Statement:**

Amazon seeks judgments that it does not infringe any of the asserted claims of any of the asserted patents and that the claims of those patents are invalid and unenforceable.  Amazon further seeks its reasonable costs and expenses, including attorneys' fees and expert witness fees, pursuant to 35 U.S.C. § 285.

If liability is established, Defendants contend that damages should be calculated as a one-time, fully-paid up, lump-sum license reflecting a hypothetical negotiation at the date of first infringement.

**12.      SETTLEMENT AND ADR**

The parties agree to private ADR in accordance with ADR L.R. 3-4(b). For Jawbone to be in a position to negotiate a resolution, Jawbone needs discovery pertaining to at least the functionality of the accused products; Amazon's development, production, marketing and sales of the accused products; and Amazon's patent licensing practices and activities.   Amazon needs discovery pertaining to at least: (a) any agreements involving the Patents-in-Suit, including Jawbone's settlement agreements with Samsung and Apple; (b) the conception and reduction to practice of the claimed inventions; and (c) ownership and inventorship of the Patents-in-Suit.  Amazon disagrees that its development, production, and marketing of the allegedly infringing products is relevant to the parties' ability to negotiate a resolution to this case.

The parties agree that ADR is unlikely to be productive before a claim construction hearing in this case.  Thus, the parties jointly propose that the deadline for the completion of private ADR be set for 60 days after the Court issues its Claim Construction Order.

Amazon further believes that private ADR is unlikely to be productive while the IPR proceedings are pending and, therefore, any ADR should occur after the conclusion of the IPRs.

**13.      OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

RUSS AUGUST & KABAT

**14.    NARROWING OF ISSUES**

The parties do not currently request any bifurcation of issues, claims or defenses. The parties each anticipate that they may file one or more motions for summary judgment or adjudication at the appropriate time that may narrow the issues in this case. The parties also anticipate that they will file motions *in limine* and may file stipulated facts at the appropriate time that will further expedite the presentation of evidence at trial.

### a.  Plaintiff's Proposal

Plaintiff proposes the following reduction of claims and prior art references.

1.  Plaintiff's Preliminary Election of Asserted Claims: Plaintiff shall assert no more than 10 claims from each patent and no more than 54 total claims by the completion of claim construction discovery.

2.  Defendants' Preliminary Election of Prior Art: Defendants shall assert no more than 12 prior art references against each patent and not more than a total of 50 references by not later than 28 days after service of the Preliminary Election of Asserted Claims.

3.  Plaintiff's Final Election of Asserted Claims: Plaintiff shall assert no more than 5 asserted claims per patent from among the previously identified claims and no more than a total of 16 total claims not later than 28 days before the service of expert reports by the party with the burden of proof on an issue.

4.  Defendants' Final Election of Prior Art: Defendants shall assert no more than 6 asserted prior art references per patent from the previously identified references and not more than a total of 25 references by the date set for the service of expert reports by the party with the burden of proof on an issue.

Defendants' proposal to narrow claims before claim construction discovery has been completed is unreasonable. Amazon has not served its invalidity contentions in this case, and its production of source code and technical documents in the EDTX Case was incomplete. Jawbone cannot be expected to narrow its asserted claims until it understands Amazon's positions on these issues *in this case* and has the opportunity to review and analyze a full production of technical

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

documents and source code.  Such an early reduction of claim terms would be highly prejudicial to Jawbone and would pose the significant risk that it would be forced to drop claims without having a fair picture of the infringement, invalidity, and claim construction landscape with respect to those claims. It appears that this is exactly the result that Amazon seeks.

Amazon agreed to the above deadlines in the EDTX Case and offers no reason why it would have agreed to these deadlines if it "makes no sense."  In the *Samsung*, *Google*, and *Apple* cases, the parties agreed to similar deadlines and were able to brief and argue claim construction without difficulty. While Amazon cites to the number of claims as the reason for requesting narrowing of claims before it serves invalidity contentions or provides technical discovery, there is significant overlap between the substance of the claims, many of the differences between claims do not affect claim construction, and most of the claim terms likely to be disputed are shared across several claims.

As a partical matter, the number of claim terms that can reasonably be disputed is quite low. For instance, in the *Apple* and *Google* cases, the parties briefed only 10 claim terms (or sets of synonymous or corresponding claim terms), and in the *Samsung* case, the parties briefed only 7 sets of claim terms.  None of the parties in those cases complained of any prejudice from having to prepare a Joint Claim Construction Chart that included claims which were later dropped.  Amazon's concerns about the deadlines in Jawbone's proposed schedule, which it previously agreed to, are overblown and likely motivated by a desire to prematurely reduce the scope of the case to Jawbone's detriment.

### b.  Defendants' Proposal

Plaintiff is currently asserting nine patents and 219 claims.  Jawbone served its infringement contentions in the EDTX on March 16, 2022.  Amazon served its preliminary invalidity contentions on June 23, 2022.  Before that, in May 2022, Amazon produced its core technical documents, including source code, describing the operation of the accused products.  Jawbone has reviewed Amazon's source code.  Amazon has since filed IPR petitions challenging the validity of all 9 patents.  At this stage, there is no need for Jawbone to continue to assert 219 claims.  It should be in a position to narrow the scope of this case.  *See* Federal Circuit Advisory Committee's Model Order

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

Limiting Excess Patent Claims and Prior Art ("FCAC Model Order"), at 3 (the first "logical point for imposing limits" is "after production of 'core' technical documents but before claim construction").  Accordingly, Amazon proposes that Plaintiff narrow the scope of this case and limit the number of asserted claims when Jawbone serves its updated infringement contentions pursuant to this Court's Patent L.R. 3-1.

Jawbone's proposal would result in Jawbone reducing the number of asserted claims *after* the parties exchange proposed terms for construction, *after* they exchange proposed constructions, *after* they serve expert reports, and *after* the they submit their Joint Claim Construction and Prehearing Statement to the Court.  This makes no sense.  The parties should not be forced to try to identify relevant claim terms, prepare expert reports, and submit a Joint Claim Construction and Prehearing Statement to the Court on 200+ claims, only to have Jawbone immediately thereafter reduce its number of asserted claims to 54.  That proposal risks rendering much of the Joint Claim Construction and Prehearing Statement, and much of the Expert Reports, irrelevant.  Such a proposal is inefficient and wasteful.

The number of asserted claims should be reduced *before* the parties engage in identifying the list of terms to be construed, providing proposed constructions, serving expert reports, and submitting a Joint Statement identifying the key terms.  Reducing the number of asserted claims at the outset of that process will allow the parties to focus their efforts, and the Court's time, on the core issues of the claims that will actually be litigated.  (*See* FCAC Model Order, at 1 (recommending the first reduction in asserted claims before claim construction because "the inclusion of superfluous claims" can function to "hide the ball" and inflate litigation costs because each unnecessary asserted claim must be analyzed and charted).)

Likewise, Amazon believes that the second reduction in the number of asserted claims should occur shortly after the Court issues its claim construction order, not at the end of fact discovery, to help limit the scope of fact discovery.

Jawbone argues that Amazon agreed to Jawbone's proposed schedule for reducing asserted claims in the EDTX (though not Jawbone's current proposal for the number of permitted claims).

18

**JOINT CASE MANAGEMENT STATEMENT**

But the schedule was set by the EDTX model order for focusing asserted claims. This case is no longer in the EDTX, and Jawbone has now had access to Amazon's source code, technical documentation, and invalidity contentions for the better part of a year.  The transfer of the case to this district is no reason to allow Jawbone to prolong keeping its case at its presently unmanageable state of 219 asserted claims.  Jawbone even acknowledges that "there is significant overlap between the substance of the claims," which just confirms that the number of asserted claims can and should be reduced now.

Accordingly, Amazon proposes the following schedule for the narrowing of issues:

5. On the Date for Serving Infringement Contentions: Plaintiff serves Preliminary Election of Asserted Claims, which shall assert no more than 10 claims from each patent and no more than 42 total claims;

6. On the Date for Serving Invalidity Contentions: Defendants serve Preliminary Election of Asserted Prior Art, which shall assert no more than 12 prior art references against each patent and not more than 50 total references;

7.  Eight Weeks After Claim Construction Order: Plaintiff serves Further Election of Asserted Claims, which shall identify no more than 5 asserted claims per patent (from among the 10 previously identified claims) and no more than a total of 16 claims.

8. Twelve Weeks After Claim Construction Order: Defendants serve Further Election of Asserted Prior Art, which shall identify no more than 6 asserted prior art references per patent (from among the 12 prior art references previously identified for that particular patent) and no more than a total of 30 references.

As to the numerical limits, Plaintiff previously stipulated to the numerical limits Amazon proposes while the case was pending in the EDTX.  (Dkt. No. 32 (Joint Mot. for Entry of Agreed Order Focusing Patent Claims and Prior Art), at §§ 2-3 (limiting asserted claims to no more than 10 per patent and a total of 42)); Dkt. No. 41 (Order) at §§ 2-3.)  Plaintiff now proposes increasing the number of claims it can assert to 54 (from the previously agreed-to 42) and reducing the number of prior art references that Defendants can rely on to 25 (from the previously agreed-to 30).  Plaintiff

19

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

has not provided any good cause for modifying these limits, to which it previously stipulated. Defendants anticipate Plaintiff will need to further reduce the asserted claims to fit its case within the time constraints for trial.  Defendants propose the parties further reduce their theories before trial, with Plaintiff's final reduction due four weeks before the final pretrial conference.

**15.     EXPEDITIED TRIAL PROCEDURE**

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**16.     SCHEDULING**

a.  **Plaintiff's Position:**

The Parties agree to the dates submitted below if the case is not stayed.  Plaintiff disagrees that a case schedule does not need to be entered at this time.

b. **Defendants' Position:**

Amazon has filed a motion to stay this case pending parallel proceedings.  (Dkt. No. 85.) The hearing on that motion is set for March 21, 2023.  (Dkt. No. 86.)  Accordingly, Amazon does not believe that a case schedule needs to be entered at this time.

If the Court does not stay the case, then the parties agree to the following schedule up through the claim construction hearing.  Pursuant to the Court's Standing Order for Patent Cases, the parties anticipate providing a further joint case management status report with proposals for the remainder of the case schedule after the Court issues its claim construction ruling.  (Standing Order for Patent Cases § 13(e) (further joint case management status report will address "proposed deadlines and court dates for the remainder of the case schedule").)

| Event | Agreed Dates If Case Is Not Stayed |
|---|---|
| Initial Case Management Conference | 02/16/23 |
| Hearing on Amazon's Motion to Stay | 3/21/23 |

RUSS AUGUST & KABAT

| Event | Agreed Dates If Case Is Not Stayed |
|---|---|
| L.R. 3-1 & 3-2 Disclosure of Asserted Claims and Infringement Contentions; Document Production Accompanying Disclosure | 4/6/23 |
| L.R. 3-3 & 3-4 Invalidity Contentions; Document Production Accompanying Invalidity Contentions | 5/18/23 |
| L.R. 4-1 Parties to Exchange Proposed Terms for Construction | 6/1/23 |
| L.R. 4-2 Exchange of Preliminary Claim Constructions and Extrinsic Evidence | 6/22/23 |
| L.R. 3-8 Damages Contentions | 7/6/23 |
| L.R. 4-3 Joint Claim Construction and Prehearing Statement and Expert Reports | 7/20/23 |
| L.R. 3-9 Responsive Damages Contentions | 8/3/23 |
| L.R. 4-4 Completion of Claim Construction Discovery | 8/10/23 |
| L.R. 4-5 Jawbone's Opening Markman Brief | 9/1/23 |
| L.R. 4-5 Defendants' Responsive Markman Brief | 9/21/23 |
| L.R. 4-5 Jawbone's Reply Markman Brief | 10/5/23 |
| L.R. 4-6 Claim Construction Hearing | 10/19/23 or as soon thereafter as is convenient for the Court |

17. **TRIAL**

**Plaintiff's Proposal:** Plaintiff requests a single jury trial on all issues to which a party is entitled to a jury.  Plaintiff expects trial to last about nine court days

**Defendants' Proposal:** Defendants request a single jury trial on all issues to which a party is entitled to a jury.  Defendants expect the jury trial to last about 11 court days, unless the issues are substantially narrowed.  Defendants anticipate an additional court day for a bench trial on inequitable conduct and unenforceability.

18. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties have all filed Certification of Interested Entities or Person, as required by Civil Local Rule 3-15.

JI Audio Holdings, LLC, Voice Detection Systems, LLC, and J Fitness LLC are members of Jawbone Innovations, LLC.

21

Amazon.com Services, Inc. was converted to Amazon.com Services LLC in 2019. Amazon.com Services LLC is a wholly owned subsidiary of Defendant Amazon.com, Inc. Amazon.com, Inc. is a publicly traded company.

**19.   PROFESSIONAL CONDUCT**

All attorneys of record for each of the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   OTHER MATTERS (PATENT LOCAL RULE 2-1(B))**

**(1)  Proposed Modification of Patent Local Rules**

The Parties do not believe any modification of the patent local rules is necessary at this time.

**(2)  Scope and Timing of Claim Construction Discovery**

The Parties do not believe any specific timing for claim construction discovery aside from what is already set forth in Patent Local Rule 4-4.

**(3)  Format of the Claim Construction Hearing**

The parties expect that 3 hours will provide sufficient time to conduct the claim construction hearing. The parties defer to the Court regarding the order of presentation that the Court will find most helpful.

**(4)  How the parties intend to educate the court on the technology at issue.**

The parties are prepared to submit technology tutorials in advance of the claim construction hearing as provided in Sections 7-8 of the Court's Standing Order for Patent Cases.

DATED: February 9, 2023                    Respectfully submitted,

                                           **RUSS AUGUST & KABAT**
                                           By:  */s/ Benjamin T. Wang*
                                                Benjamin T. Wang


                                           **FABRICANT LLP**
                                           Alfred R. Fabricant
                                           afabricant@fabricantllp.com
                                           Peter Lambrianakos
                                           plambrianakos@fabricantllp.com
                                           Vincent J. Rubino, III

22

**JOINT CASE MANAGEMENT STATEMENT**

RUSS AUGUST & KABAT

vrubino@fabricantllp.com
Richard Cowell
rcowell@fabricantllp.com
Justine Minseon Park
apark@fabricantllp.com
Jacob Ostling
jostling@fabricantllp.com
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

*Attorneys for Plaintiff*
Jawbone Innovations, LLC

DATED: February 9, 2023

**KNOBBE MARTENS OLSON & BEAR, LLP**
By: */s/ Mark Lezama*

Joseph R. Re (SBN 134479)
joe.re@knobbe.com
Colin B. Heideman (SBN 238674)
colin.heideman@knobbe.com
Mark Lezama (SBN 253479)
mark.lezama@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Counsel for Defendants
AMAZON.COM, INC. and
AMAZON.COM SERVICES, INC.

RUSS AUGUST & KABAT

23

**JOINT CASE MANAGEMENT STATEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS AUGUST & KABAT

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(i), I hereby attest that all other signatures listed, and on whose behalf the filing is submitted, concur in this document's content and have authorized the filing of this document with the use of their electronic signature.

*Benjamin T. Wang*
Benjamin T. Wang

24

**JOINT CASE MANAGEMENT STATEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS AUGUST & KABAT

3746-002

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of California using the CM/ECF System on February 9, 2023.

I certify that all counsel of record who are deemed to have consented to electronic service are being served on February 9, 2023 with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

DATED: February 9, 2023

*/s/ Benjamin T. Wang*
Benjamin T. Wang

25